IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH BOGARDE,                        :
    Plaintiff,                          :
                                        :
    v.                                  :          CIVIL ACTION NO. 25-CV-6704
                                        :
SUPERINTENDENT TERRA, *et al.*,        :
    Defendants.                         :

**MEMORANDUM**

**BAYLSON, J.**                                            **JUNE  23, 2026**

*Pro se* Plaintiff Joseph Bogarde filed this civil action against Superintendent Terra, Deputy Superintendent Sipple, Lieutenant Wade, Unit Manager Baldwin, and Wellpath Health Care Services ("Wellpath"), while he was an inmate at SCI Phoenix.[1]  Bogarde alleges that the Defendants delayed his receiving a daily medication for over two hours, and that they retaliated against him.  (*See* ECF No. 6 at 2-4.)  Bogarde seeks leave to proceed *in forma pauperis.*[2]  (ECF No. 10.)  For the following reasons, the Court will grant Bogarde leave to proceed *in forma pauperis* and dismiss the Complaint for failure to state a claim and for lack of subject matter

---

[1] Bogarde is no longer incarcerated.  In a March 27, 2026 change of address notice, Bogarde provided the Court with an address for a residence in Levittown, Pennsylvania (ECF No. 8), and his release was confirmed through a search of an online database of incarcerated persons in Pennsylvania.

[2] Bogarde originally sought leave to proceed *in forma pauperis* while he was still an inmate at SCI Phoenix.  After his release, his motion to proceed *in forma pauperis* was denied without prejudice, but Bogarde was required to pay the initial partial filing fee because he had filed this civil action while incarcerated and was thus subject to the provisions of the Prison Litigation Reform Act.  (ECF No. 9 at 1-2); *Drayer v. Att'y Gen. of Del.*, 81 F. App'x 429, 431 (3d Cir. 2003) (*per curiam*).  Bogarde paid the initial partial filing fee on April 30, 2026.  (*See* ECF No. 11.)  He now seeks leave to proceed *in forma pauperis* so that he may avoid paying the remainder of the filing fee to commence this action.

jurisdiction.  Bogarde will be permitted to file a second amended complaint as to any claims dismissed without prejudice.

## I.      FACTUAL ALLEGATIONS[3]

Bogarde takes an otherwise unspecified "special" medication that required him to obtain a pass to visit the medical unit at SCI Phoenix each morning.  (Am. Compl. at 2.)  On April 22, 2025, Bogarde was in the visitation area and, when he later returned to his unit, asked the Housing Unit Correctional Officer for a pass to the medical unit.  (*Id.*)  None of the staff in the housing unit would provide a pass.  (*Id.*)  After trying for an hour, Bogarde asked the "Housing Unit Bubble Correctional Officer" to call for a lieutenant, but that officer told him that he "was burnt and could go (fuck himself), and that the medication was a dead issue."  (*Id.*)  Bogarde asked more than once to speak directly to Defendant Lieutenant Wade, the lieutenant on duty, but Wade apparently conveyed via the "Bubble Correctional Officer" that Bogarde "was not going to get any kind of medication."  (*Id.* at 3.)  Bogarde also attempted to speak with other housing unit staff employees, including Defendant Unit Manager Baldwin, who expressed a lack of interest in Bogarde's difficulty obtaining a pass to visit medical.  (*Id.*)  Bogarde states, without any apparent context, that the refusal "was done directly in relation to the plaintiff trying to fix an order that was set by the plaintiff's sentencing judge, however the unit manager failed to acknowledge the legal documents sent directly to her offices that have gone unanswered as of

---

[3] The factual allegations in this Memorandum are taken from Bogarde's Amended Complaint ("Am. Compl."). (ECF No. 6.)  The document that was filed in the case as the original Complaint consisted of a letter in which Bogard advised that a complaint had been sent to the Court, however, after no such document was received, the Court ordered him to file a proper complaint or the matter would be dismissed, (*see* ECF No. 5).  Bogarde then filed this Amended Complaint.  The Court adopts the pagination supplied by the CM/ECF docketing system.  Where the Court quotes from the Complaint, punctuation, spelling, and capitalization will be cleaned up as needed.

today's date." (*Id*.)  He claims that he also went to the Housing Unit Counselor, but "plaintiff did not get any kind of response." (*Id*.)  The Unit Counselor apparently called Wellpath about the problem but Wellpath "chose to do nothing to help rectify the problem." (*Id*. at 8.)  He waited over two hours to get a pass and alleges that this deliberate refusal to provide his daily medication constituted cruel and unusual punishment. (*Id.* at 3.)

Bogarde filed a prison grievance and complained to various outside agencies about his treatment and the April 22 refusal of medicine. (*Id*.)  He claims that he did not violate any Department of Corrections ("DOC") policies or procedures to warrant the treatment. (*Id*.) Lieutenant Wade tried to get Bogarde to drop the grievance, but Bogarde refused. (*Id*.) Thereafter, Bogarde was allegedly retaliated against for filing grievances, outside complaints, a sick call "request to staff," and his "request to staff" slips to speak with someone from the Superintendent's office that were not answered. (*Id*. at 4.)  Also, members of the DOC staff began to "falsify documents in regards to the grievance system and the way the grievance system is set up."[4] (*Id.*)  Bogarde claims that DOC staff provided answers that were "very unprofessional and without the proper structure under the care[,] custody[,] and control of the facility as a whole." (*Id*.)  The DOC staff's actions have allegedly caused operational "disruptions" that led to the incident he suffered. (*Id*.)  He still does not know which staff were working on his housing unit during the incident because staff members refuse to wear name tags or other identification. (*Id*.)  He claims that SCI Phoenix staff members "do[] whatever they want, when ever they want, regardless of their care[,] custody[,] and control policies." (*Id*.)

---

[4] While the Court understands Bogarde to assert a retaliation claim based on his grievance activity, any claims based on the handling of prison grievances themselves fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).

Bogarde submitted this Complaint pursuant to 42 U.S.C. § 1983 alleging constitutional claims and claims for negligence under Pennsylvania law. (*Id.* at 1.) As relief, he requests money damages and injunctive relief.[5] (*Id.* at 9.)

## II.    STANDARD OF REVIEW

The Court will grant Bogarde leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss a complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this point, the Court accepts all plausible facts alleged in Bogarde's Amended Complaint as true, draws all reasonable inferences in his favor, and asks only whether the Amended Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Bogarde is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

---

[5] To the extent that Bogarde requests injunctive relief, it is dismissed as moot due to his release from prison. *Cobb v. Yost*, 342 F. App'x 858, 859 (3d Cir. 2009) ("[I]t takes little analysis to conclude that [the plaintiff's] request for injunctive relief ( . . . for medications in prison) is moot.").

244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.* (quoting *Mala*, 704 F.3d at 244).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).

In addition, the Court must dismiss the action "[i]f the court determines at any time that it lacks subject-matter jurisdiction."  Fed. R. Civ. P. 12(h)(3); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III.    DISCUSSION

Bogarde expressly raises claims for deliberate indifference under federal constitutional law and claims of negligence under state law.  (Am. Compl. at 1.)  The Complaint may also be fairly read to raise a claim for retaliation under the First Amendment.  (*Id*. at 3, 4.)

### A.    § 1983 Claims

The vehicle by which federal constitutional claims may be brought in federal court is an action under 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege

how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### 1.    Constitutional Claims Against Wellpath

The deliberate indifference claims alleged against Wellpath cannot proceed as currently pleaded. A private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances. The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) to claims against medical contractor)). Rather, [t]o plead a § 1983 claim against a prison medical provider, a plaintiff must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."[6] *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or a custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."

---

[6] A plaintiff may also state a basis for liability against an entity like Wellpath by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. Prime Care Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe County*, 789 F. App'x 313 (3d Cir. 2019). Bogarde has not alleged that he was injured due to a failure to supervise, train, or discipline.

6

*Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

Bogarde has not tied his allegations of deliberate indifference to a custom or policy of Wellpath. In fact, he has not identified any policy or custom by Wellpath in his Complaint that caused his alleged constitutional violation. Rather, Bogarde alleges that Wellpath "failed to maintain their medical facility in a reasonable [sic] safe working condition" and that it did not help Bogarde obtain proper medical treatment on April 22 after receiving a call from the Unit Counselor. (Am. Compl. at 8.) In the absence of allegations of a policy or custom by Wellpath that specifically caused his injuries, the allegations are insufficient to allege a plausible claim against Wellpath. *Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotations omitted)). The deliberate indifference claim alleged against Wellpath will be dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Eighth Amendment Claims

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[7] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Colburn v. Upper Darby Township*,

---

[7] Bogarde appears to be a convicted prisoner, so the Eighth Amendment governs his claims. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (finding that a failure to provide adequate medical care constitutes cruel and unusual punishment).

7

946 F.2d 1017, 1023 (3d Cir. 1991)); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (explaining that a serious medical need must present "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" (quoting *Farmer*, 511 U.S. at 843)). Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted). "[P]rison officials may not 'deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)).

Bogarde avers that the Defendants refused to provide or assist in providing a pass for him to visit the medical unit at the prison on April 22, 2025, to receive his daily medication. (Am. Compl. at 3-4, 8.) He states that he waited over two hours "trying to get a pass in which case the plaintiff was deliberately refused his daily medication and was subjected to cruel and unusual punishment by every single correctional staff that was on duty [in the housing unit] on the day of this incident." (*Id*. at 3.) Although Bogarde claims that his daily medication is "special" and requires administration at the medical unit, he provides no facts in his Amended Complaint identifying the medication, describing his condition, the risks posed by a denial or delay of the medicine, or that officers were cognizant of such risks when they delayed his medication administration for two hours. This failure makes his claim implausible. *See Brooks v. Kyler*, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (reversing grant of summary judgment on excessive force claim but affirming that there was no deliberate indifference where no evidence suggested that

8

officers initially refusing request for doctor believed inmate needed "immediate medical treatment, or that the temporary denial exposed the inmate to undue suffering or the threat of tangible residual injury." (cleaned up)).  Bogarde also fails to allege that he suffered any injury due to the over two-hour delay of his medicine.  *See id*. (affirming that a "temporary" denial of treatment is not deliberate indifference where inmate presented no evidence resulting from delay in medical treatment) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious."); *Joh v. Suhey*, 709 F. App'x 729, 731 (3d Cir. 2017) (affirming dismissal of deliberate indifference claim where nurse's delay of treating inmate's broken finger for an hour was not alleged to have led to any serious harm); *Noel v. Shaw*, No. 25-163, 2025 WL 1239331, at *5 (M.D. Pa. Apr. 29, 2025) (determining that inmate failed to state claim for deliberate indifference when he failed to allege that he suffered any harm from the approximately one-day delay in receiving prescribed blood pressure medication).  His allegation that Unit Manager Baldwin and unnamed others were not "interested" in addressing the problem, due to Bogarde's "trying to fix an order that was set by the plaintiff's sentencing judge" and Baldwin's failure to "acknowledge the legal documents sent directly to her offices" (Am. Compl. at 3), does not make his deliberate indifference claim plausible given the absence of facts about his condition and how the short delay in getting his medicine harmed him.

9

Construed liberally, these allegations do not state a plausible claim of deliberate indifference to a serious medical need under the Eighth Amendment.[8] The claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[8] As alleged against Terra and Sipple, the claim would also not be viable. It appears that Bogarde names Terra and Sipple as defendants because they hold positions of supervisory authority at SCI Phoenix. (*See* Am. Compl. at 4 ("Superintendent Terra is said to be responsible for the overall operation of this facility of SCI Phoenix, and that would cover the medical department, and their staff.").) "[A] director cannot be held liable 'simply because of his position as the head of the [agency].'" *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Nor can liability under § 1983 be predicated on a respondeat superior basis. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). A supervisor may "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015) (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). A supervisor may also be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K.*, 372 F.3d at 586 (alteration in original)). This type of liability also includes a failure to supervise or train, but a plaintiff asserting such a claim must identify the supervisory or training policy the supervisor failed to employ and "then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory [or training] practice or procedure." *Barkes*, 766 F.3d at 317 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); then citing *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001)); *see also Chavarriaga*, 806 F.3d at 227.

In his Amended Complaint, Bogarde does not assert that Terra and Sipple personally had any role in the alleged events or that either of them personally directed the actions of anyone else. *See Rode*, 845 F.2d at 1207; *Barkes*, 766 F.3d at 316. Rather, he contends that Terra "was aware" of the deliberate indifference because Bogarde "made it directly known to Terra" that he was trying to go to the medical unit. (Am. Compl. at 5.) Read liberally, the Court understands Bogarde to be asserting that Terra was aware of his issue because he reviewed a grievance since Bogarde alleges elsewhere in his factual summary that he had requested "to speak with someone from the Superintendent[']s office to rectify these problems, which went unanswered." (*Id*. at 4). But knowledge gained by reviewing a grievance is insufficient to make a plausible claim of personal involvement. *Dooley*, 957 F.3d at 374 (holding that attaching documents to grievance form is insufficient under *Rode*, to show personal direction or actual knowledge by recipient of underlying facts).

10

### 3.    First Amendment Claims

To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he

engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to

deter a person of ordinary firmness from exercising his constitutional rights; and (3) the

constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.

*See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Watson v. Rozum*, 834 F.3d 417,

422-23 (3d Cir. 2016).  Although a prisoner has no constitutional right to a grievance process,

*see Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*), a prisoner can state a

claim based on retaliation for filing a grievance.  *See Robinson v. Taylor*, 204 F. App'x 155, 157

(3d Cir. 2006) (*per curiam*) (holding that a prisoner's filing of a grievance is constitutionally

protected conduct) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Davis v. Goord*,

320 F.3d 346, 352-53 (2d Cir. 2003)); *Peterson v. Franrak*, No. 25-4538, 2025 WL 3485825, at

*5 (E.D. Pa. Dec. 4, 2025).  "An adverse consequence 'need not be great in order to be

actionable[;]' rather, it need only be 'more than *de minimis*.'"  *Watson*, 834 F.3d at 423 (quoting

*McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "To establish the

requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive

temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a

---

To the extent that Bogarde asserts that Terra and Sipple "provid[ed] inadequate staff" who failed to adequately perform "their daily duty," this conclusory statement does not provide any concrete factual support for his failure-to-train allegation and is really nothing more than a thinly-veiled claim of respondeat superior liability.  *Santos v. Berroa*, No. 25-6329, 2026 WL 184266, at *16 (E.D. Pa. Jan. 23, 2026) (rejecting inmate's supervisory liability claim alleging "staff were not trained to follow constitutional limits" resulting in deliberate indifference as generalized allegations insufficient to attribute liability) (citing *Torres v. Monmouth Cnty. Corr. Inst.*, No. 19-17704, 2021 WL 3773687, at *6 (D.N.J. Aug. 25, 2021) (dismissing failure-to-train claims where allegations were vague and the plaintiff did not provide "facts showing a pattern of prior incidents that would suggest a need for additional training")).

pattern of antagonism coupled with timing to establish a causal link." *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Bogarde asserts that unspecified staff members started to retaliate against him for filing grievances, outside complaints, sick call requests, and requests to staff after he told officials he would not drop a grievance. (Am. Compl. at 4.) This took the form of falsifying "documents in regards to the grievance system and the way that the grievance system is set up." (*Id*.) They also provided "unprofessional" answers after he filed a grievance and complained to outside groups. (*Id*. at 4.)

As a threshold matter, Bogarde's allegations against nonspecific "Department of Corrections Staff Members" is insufficient to plead a claim under § 1983. *See Walker v. Wetzel*, No. 22-1357, 2022 WL 4103632, at *3 (3d Cir. Sept. 8, 2022) (*per curiam*) (affirming district court's conclusion that generalized reference to "officers" did not allege personal involvement); *Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with the district court that the "repeated and collective use of the word 'Defendants' fail[ed] to name which specific Defendant engaged in the specific conduct alleged" (quotation marks omitted)). Rather, a plaintiff must plausibly plead that a defendant is personally involved in the violation of his civil rights. *Rode*, 845 F.2d at 1207.

Moreover, his retaliation claim is not plausible because he fails to allege even a *de minimis* consequence concerning how he was retaliated against since, at best, he claims his medication was delayed by about two hours on April 22, he does not allege that he was additionally prevented from getting his medication, and he does not allege any other consequence arising from the filing of a grievance. He also fails to allege a time frame in which

12

the retaliation occurred in relation to the protected conduct.  This claim will thus be dismissed as well pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### D.    State Law Claims for Negligence

Bogarde asserts negligence claims under Pennsylvania law against all Defendants.  (Am. Compl. at 5-8.)  Because the Court has dismissed the federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims.  District courts may exercise jurisdiction over cases raising claims exclusively under state law if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant."  *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (citations omitted).  For diversity purposes, an individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  For diversity purposes, a corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business.  *See* 28 U.S.C. § 1332(c).

Bogarde has failed to meet his burden to allege a basis for this federal court's jurisdiction over his state law claims because he does not allege the citizenship of parties.  The Amended Complaint implies that Bogarde is a Pennsylvania citizen, but does not say so directly.  (*See* Am. Compl. at 1.)  The Amended Complaint also does not allege the citizenship of any of the Defendants.  Bogarde sued more than one entity, and he thus must allege the citizenship of each

13

of those entities properly.  Because the Amended Complaint is silent on these points, Bogarde

has not met his burden of alleging a basis for the exercise of diversity jurisdiction over his claims

alleged under Pennsylvania law.  Accordingly, the claims cannot proceed and will be dismissed

without prejudice for lack of subject matter jurisdiction.

## IV.      CONCLUSION

For the foregoing reasons, the Court will grant Bogarde leave to proceed *in forma*

*pauperis* and dismiss his Amended Complaint in part with prejudice and in part without

prejudice.  Bogarde's Eighth Amendment claims will be dismissed with prejudice pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim.  He will not be given leave to amend those

claims because the Court concludes that amendment would be futile.  *Grayson v. Mayview State*

*Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  The First Amendment retaliation claim will be

dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a

claim.  The state law claims alleging negligence will be dismissed without prejudice for lack of

subject matter jurisdiction.  Bogarde will be given an opportunity to correct the defects in his

claims by filing a second amended complaint as to any claims dismissed without prejudice.  Any

second amended complaint must clearly describe the factual basis for his claims and how each

defendant he names was personally involved in the alleged denial of his rights.  Bogarde may not

reassert a claim that has already been dismissed with prejudice.  An appropriate Order follows,

which provides further information regarding amendment.

BY THE COURT:

/s/ Michael M. Baylson

_____

MICHAEL M. BAYLSON, J.